IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PAULETTE JOHNSON,

       Plaintiff,                     NO. 3:17-cv-001240

vs.                                        CHIEF JUDGE WAVERLY D. CRENSHAW, JR.
                                                Magistrate Judge Kemp

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

To: The Honorable Waverly D. Crenshaw, Chief Judge

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. On February 14, 2018, Plaintiff filed a motion for judgment on the record and a supporting memorandum (Doc. 12). The Commissioner responded on March 14, 2018. (Doc. 13). For the following reasons, it will be recommended that the Plaintiff's motion be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### I. Background

Plaintiff filed her application for benefits on May 2, 2013, asserting that she became disabled on January 1, 2013 (the date was later amended to January 17, 2013). On September 27, 2013, that application was denied, and Plaintiff's request for reconsideration was denied on June 12, 2014. She then asked for a hearing before an Administrative Law Judge (ALJ). A hearing was held on June 21, 2016. Plaintiff and a vocational expert, Rebecca G. Williams, testified at the hearing.

In a decision dated July 15, 2016, the ALJ determined that Plaintiff did not meet the requirements for disability. Plaintiff sought review of that decision from the Appeals Council, but her appeal was denied on July 12, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 10).

## II. The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from hr amended alleged onset date of January 17, 2103 through her date last insured of September 30, 2015.

3. Through the date last insured, the claimant has the following severe impairments: diabetes mellitus, hypertension, degenerative disc disease, obesity, right knee osteoarthritis, and history of Wolf-Parkinson-White Syndrome.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently balance and stoop; occasionally kneel, crouch, crawl, and climb ramps/stairs; no climbing of ladders, ropes or scaffolds; occasionally reach overhead bilaterally; frequently handle and finger with the left upper extremity; frequently handle, finger, and reach in all directions except overhead with the right upper extremity, and Frequent push/pull with the right upper extremity.

6. Through the date last insured, the claimant was capable of performing past relevant work as a medical technologist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 17, 2013, the amended alleged onset date, through September 30, 2015, the date last insured.

## III. Plaintiff's Claims

Plaintiff makes the following claims in her motion for judgment and memorandum:

1. Whether the Administrative Law Judge's determination that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 [citation omitted] is supported by substantial evidence?

2. Whether the Administrative Law Judge's determination that Claimant retains the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently balance and stoop; occasionally kneel, crouch, crawl, and climb ramps/stairs; no climbing of ladders, ropes or scaffolds; occasionally reach overhead bilaterally; frequently handle and finger with the left upper extremity; frequently handle, finger, and reach in all directions except overhead with the right upper extremity, and frequent push/pull with the right upper extremity is based upon substantial evidence?

3. Whether the Administrative Law Judge's credibility determination with respect to the claimant's subjective limitations supported (sic) by substantial evidence?

4. Whether the Vocational Expert's testimony developed fully enough to substantially serve as a basis for denying the claimant?

### IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

> This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).
>
> Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

#### A. Hearing Testimony

Plaintiff first testified about her employment as a lab technician. She said that she performed a combination of clerical and technical tasks and also did some biomedical engineering. She had an associate degree in medical laboratory technology and had also passed various additional examinations related to her work. She was certified as both a medical technologist and also a supervisor. She supervised two other workers in addition to doing her own work.

When asked about her decision to retire in 2013, Plaintiff explained that she had problems using her hands, and that the job was also mentally stressful. She had not sought any mental health treatment, however, other than seeing counselors at her jobsite. In 2011, Plaintiff underwent a procedure on her left hand called a pulley release because she could not operate the focusing mechanism on a microscope with just one hand. Her hand did improve afterward. She also noticed problems with her neck and shoulders from sitting and using a microscope. She had one injection for pain and declined surgery because there was no guarantee that it would help. Numbness in her hands, which occurred from time to time, affected her ability to work, and the pain affected her ability to concentrate.

To alleviate pain, Plaintiff said she would change positions frequently. She did not believe that she could have done so and continued to work. She could sit for two to three hours at a time if she were otherwise inactive, but if she were working she could not sit and stand for a total of eight hours. Her computer use was also restricted due to numbness in her hands. (Tr. 38-44, 46-54).

A vocational expert, Rebecca Williams, also testified at the administrative hearing. She characterized Plaintiff's job as advanced medical technologist and said that it was light in exertional level and highly skilled. She was then asked to consider a hypothetical person with Plaintiff's age, experience, and education who could do light work with frequent balancing and stooping, occasional kneeling, crouching, crawling, and climbing ramps and stairs, no climbing of ropes or scaffolds, only occasional overhead reaching bilaterally, and frequent handling and fingering with the left hand. Ms. Williams said such a person could perform Plaintiff's past work. If the person was limited to frequent handling and fingering with both hands, that would not change the person's ability to do that job. However, if handling and fingering could be done only on a occasional basis, or if the person could use instruments only occasionally, the person could no longer do the job. Additionally, the need to take five to ten-minute breaks every hour would generally considered to be work-preclusive, as would the need to miss three or more days

of work per month. (Tr. 44-46, 55-57).

### B. Medical Evidence

The evidence pertinent to the conditions which, according to Plaintiff, prevented her from continuing to work - mainly problems with pain and numbness in her hands and the inability to maintain one position for any length of time - can be summarized as follows.

Plaintiff was seen on October 8, 2012, at Williamson Primary Care as a follow-up to a hospitalization for high blood pressure. Her physical exam was essentially normal. She was seen again four days later as a result of a motor vehicle accident. She complained of neck pain and tenderness. She was started on medication and x-rays were ordered. Six days after that, she was described as feeling well with minor complaints other than a knee injury. She did have persistent neck and back pain, but x-rays of those areas were negative for any acute diagnosis. Plaintiff continued to report neck pain at a November, 2012 visit, and said it was radiating into her right shoulder as well. She demonstrated moderate tenderness on palpation. Physical therapy was recommended. On January 11, 2013, just days before she stopped working, Plaintiff was seen again, and again was described as feeling well with minor complaints. She said she had been seen by Dr. Klekamp for an epidural spinal injection but that it did not work well and she was taking anti-inflammatory medication. The treatment note indicated that further follow-up on the neck and shoulder would be deferred to Dr. Klekamp. (Tr. 272-304). There are also notes of physical therapy sessions following the motor vehicle accident indicating that her prognosis was good. *E.g.* Tr. 338.

There are only a few records from Plaintiff's treatment by Dr. Klekamp. On December 19, 2012, she reported to him that she had ongoing right upper extremity pain, apparently caused by the October, 2012 motor vehicle accident. She also had pain in her right knee but it responded to treatment with anti-inflammatories and physical therapy. Her neck and shoulder pain was 5 on a 1-10 scale and she had numbness in her fingertips which was exacerbated by microscope and computer use. Dr. Klekamp's examination showed a full range of motion in the affected areas without edema or atrophy. There was some sensory diminution. X-rays and a CT scan from October, 2012 showed moderate advanced disk degeneration at C5-6 and a later MRI showed diffuse broad-based disk bulge at the same level. Dr. Klekamp recommended an epidural steroid injection. He did not find convincing evidence of nerve root compression. He saw Plaintiff again in January, 2013, shortly before she stopped working, and noted that the injection improved Plaintiff's symptoms for only a week. At that time, he diagnosed right-sided C5-6 foraminal stenosis and right-sided upper extremity radiculopathy. He prescribed medication and planned to see Plaintiff again in six weeks. She returned in April, 2013, at which time her upper extremities were neurologically stable. She said she was gradually improving and declined further treatment options. He last saw her on May 17, 2013, at which time she was referred to a nonoperative spine specialist who could evaluate her for nonsurgical treatment options. (Tr. 417-21).

In 2013, Plaintiff also sought chiropractic treatment. Her chiropractor, Jay Schroder,

wrote on August 12, 2013, that after seeing Plaintiff for several months, he concluded that increased use of her right hand and arm caused exacerbation of neck pain and radiculopathy. She therefore had restrictions in her ability to reach, push, pull, handle, and finger with her right arm and hand. (Tr. 423). His treatment notes show that Plaintiff reported ongoing shoulder and neck pain but that any pain in her hands, arms, and low back was mostly resolved. On June 10, 2013, when beginning treatment, Plaintiff reported moderate pain associated with working and little to no pain from walking or standing. (Tr. 455). Her chiropractor subsequently completed a functional capacity assessment form, stating his opinion that Plaintiff could occasionally lift up to 50 pounds, could frequently use her right hand and arm for reaching, handling, fingering, feeling, pushing, and pulling, and that she had no limitations on her ability to do various daily activities like shopping, traveling alone, walking, climbing steps at a reasonable pace, and caring for herself. (Tr. 457-62).

These records were reviewed by a state agency physician, Dr. Ryan, who concluded that Plaintiff could do a limited range of light work. She was restricted in her ability to manipulate, but could reach, handle, and finger with her left hand on a frequent basis. No such restrictions were placed on her right hand and arm. (Tr. 66-69).

### C. The ALJ's Decision

The ALJ first considered whether any of Plaintiff's impairments were of sufficient severity to satisfy the criteria for disability set forth in the Listing of Impairments, 20 CFR Part 404, Subpart P, Appendix 1. He considered four sections of the Listing - sections 1.02, 1.04, 4.00, and 9.08, which deal, respectively, with disorders of the musculoskeletal system, the cardiovascular system, and the endocrine system. The ALJ found that none of Plaintiff's impairments met or equaled the relevant criteria as "explained in detail during evaluation of the evidence." (Tr. 22).

Next, the ALJ noted that he had evaluated Plaintiff's obesity under SSR 02-1p, and had considered it in his residual functional capacity finding along with Plaintiff's co-morbid conditions of diabetes, hypertension, and osteoarthritis. *Id*.

The ALJ then turned to the residual functional capacity analysis. After citing to the pertinent regulations and rulings, he reviewed Plaintiff's testimony that she could care for herself, prepare simple meals, do chores, drive by herself, shopped, visit with others, and attend church. He noted that after some treatment provided by Dr. Lieberman in 2012, she saw Dr. Klekamp in December of that year complaining of pain radiating to her right arm. His examination on that date produced essentially normal findings, but he did review earlier imaging studies showing some abnormalities at C5-6 including moderate advanced disk degeneration and diffused broad-based disk bulge with moderate right foraminal narrowing. Right after Plaintiff stopped working, she saw Dr. Klekamp again, stating that she still had pain, but by April, it had gotten better - an improvement she attributed to not working. The ALJ also reviewed the

-6-

treatment records from Plaintiff's chiropractor and that caregiver's assessment of Plaintiff's functional capacity. Significantly, he found that Plaintiff could lift up to 50 pounds and could frequently hand, finger, push, and pull with her right hand. (Tr. 23-25).

In considering Plaintiff's abilities, the ALJ attributed some weight to the fact that Plaintiff saw Dr. Klekamp only a week before stopping work and that her exam was essentially normal at that time. Also, she was released from orthopedic care in April, 2013, because she had declined certain treatment options and her condition was slowly improving. The ALJ relied on the opinion of the state agency evaluator, Dr. Ryan, who concluded that Plaintiff could do a limited range of light work, noting that she was restricted to frequent overhead reaching with her right arm and frequent fingering and handling with her left hand, and on the option of the chiropractor that Plaintiff could do a reduced range of medium work with similar reaching, handling, and fingering restrictions. The ALJ viewed both of these opinions as consistent with the objective test results and examination findings, and also as consistent with Plaintiff's testimony about her ability to perform activities of daily living. (Tr. 27-28). Because the vocational expert testified that Plaintiff could do her past work as a medical technologist even with these restrictions, he concluded that Plaintiff was not entitled to disability benefits. (Tr. 28).

## VI. Discussion

### A. Listing 1.04A

Plaintiff's first statement of error is that the ALJ did not properly determine that she failed to meet the requirements for disability set out in section 1.04A of the Listing of Impairments. She correctly notes that in order to qualify for disability under that section, a claimant must demonstrate the existence of a disorder of the spine which results in compromise of either a nerve root or the spinal cord and which is accompanied by various symptoms including neuro-anatomic distribution of pain, limitation of motion, and motor loss accompanied by sensory or reflex loss. She contends that the diagnosis of C5-6 right-sided foraminal narrowing, upper extremity radiculopathy, and stenosis with radiating pain, coupled with Dr. Klekamp's finding of diminished sensation in the left hand, prove that Plaintiff suffered from nerve root compression and sensory loss, and that she therefore met the criteria set out in section 1.04A.

The Commissioner responds that the record does not support Plaintiff's contention that she meets all of the relevant criteria for disability. According to the Commissioner, the only mention of nerve root compression is Dr. Klekamp's December, 2012 treatment note where he states that there is no convincing evidence of that condition. Because a claimant must satisfy every requirement of a particular section of the Listing in order to qualify for benefits under that section, the Commissioner asserts that this argument lacks merit.

The Commissioner has the better of this argument. It is well-established that "[i]n order

to meet or equal the requirements of a listed impairment, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment," *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006). As in that case, here, there is a lack of evidence that all of the enumerated criteria of section 1.04A have been met. No physician said that Plaintiff suffered from nerve root compression; Plaintiff's argument that nerve root compression must necessarily exist given Dr. Klekamp's other findings is simply not supported by the record, and a reasonable person in the ALJ's position would not be compelled to make that finding. Additionally, there is little to no evidence of motor loss accompanied by sensory or reflex loss, which is another requirement of that section. No physician opined that Plaintiff's neck impairment met or equaled the requirements of the Listing. Under these circumstances, the ALJ's finding on this issue is supported by substantial evidence.

### B. Residual Functional Capacity, Credibility, and Vocational Testimony

Plaintiff makes a consolidated argument with respect to her second, third, and fourth statements of error, so the Court will also deal with them together. In that argument, Plaintiff point out that there were significant differences between what Plaintiff said she could do - particularly with respect to handling laboratory equipment, concentrating, and working on a sustained basis without absences - and the ALJ's findings on these issues. She also notes that Dr. Klekamp's notes contain an objective finding about diminished hand sensation, but the ALJ's residual functional capacity finding does not reflect this symptom. Because the vocational expert testified that if a person were limited to only occasional handling or fingering, that person could not do Plaintiff's past work, Plaintiff asserts that the ALJ's determination that she could continue to do that job is fatally flawed.

In response, the Commissioner argues, first, that the ALJ made a proper credibility determination by discounting Plaintiff's testimony because it was not consistent with the objective medical evidence in the record, much of which consisted of normal findings, and because it was also inconsistent with Plaintiff's decision not to pursue more aggressive treatment of her conditions because they were improving on their own. The Commissioner also argues that the ALJ properly took Plaintiff's activities of daily living - which included personal care, cooking, doing household chores, and shopping - into account in deciding that she was not as limited as her testimony suggested. Lastly, the Commissioner points out that the ALJ was entitled to conclude that Plaintiff did not have a serious psychological impairment because she never sought treatment for such a condition, and that the ALJ acted correctly in basing the residual functional capacity finding on the opinions of Dr. Ryan, the state agency reviewer, and Plaintiff's treating chiropractor, both of whom concluded that Plaintiff could perform a limited range of light work with restrictions that, according to the vocational expert, were consistent with the demands of Plaintiff's job.

With the exception of her reference to the treatment note from Dr. Klekamp regarding diminished hand sensation, Plaintiff's argument focuses on the ALJ's credibility determination. As this Court has said, citing to *Young v. Berryhill*, 2018 WL 1914732, *6 (W.D. Ky. Apr. 23,

2018), under the most recent Social Security Ruling addressing this issue (SSR 16-3p), "an ALJ must 'consider all of the claimant's symptoms to include her pain, and the extent to which these symptoms reasonably can be expected to be consistent with the objective medical evidence of record' and evaluate numerous factors including '(1) the severity of the objective medical evidence of record; (2) the statements of the claimant about the intensity, persistence and limiting effects of her symptoms; (3) clinical findings and observations about such symptoms; (4) statements from other sources that have information about the claimant's symptoms; (5) the daily activities of the claimant; (6) any factors that precipitate or aggravate the symptoms; (7) the type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms; (8) treatment, other than medication, for relief of pain or other symptoms; and (9) any other factors about the claimant's functional limitations and restrictions due to pain or symptoms.'" *Randolph v. Berryhill*, No. 2:17-CV-00045, 2018 WL 4214414, *5 (M.D. Tenn. Aug. 6, 2018), *adopted and affirmed* 2018 WL 4076958 (M.D. Tenn. Aug. 27, 2018).

Here, Plaintiff does not allege that the ALJ failed to follow this Ruling, nor does she claim that the various factors relied upon by the ALJ - most notably the contradictory objective medical evidence and her relatively full range of daily activities - are not supported by the record. Rather, she seems to contend, as the Commissioner points out, that the ALJ erred simply by not crediting her testimony in full. But that is not error when, consistent with the applicable law, the ALJ relies on countervailing factors and makes a credibility determination which is reasonably supported by the record. It is important to keep in mind that "[i]t is ... for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). A claimant may "ask[ ] the Court to reweigh the evidence, give her the benefit of the doubt to the extent that these facts may weigh in her favor and then advance a different view;" but that would not be proper because "the Court is charged with determining the sufficiency of the evidence, not its weight." *Thomas v. Comm'r of Social Security*, 2014 WL 2114567, *16 (N.D. Ohio May 20, 2014). The Court finds no error in the way that the ALJ evaluated Plaintiff's testimony in this case, and no basis for remanding the case for additional findings on that issue.

The remaining portion of Plaintiff's argument focuses on Dr. Klekamp's finding, in his office note dated May 17, 2013, that "[s]ensory exam is diminished in the C6 distribution in the left hand." (Tr. 421). Plaintiff appears to argue both that this finding should have been accepted by the ALJ without question, and that it equates to a finding that, at most, Plaintiff could engage in only occasional fingering and handling with her left hand.

There are several problems with that argument. First, Plaintiff fails to acknowledge that there are other medical opinions in the record which support the ALJ's conclusion that Plaintiff could engage in frequent handling and fingering, and she makes no argument as to why the ALJ was not entitled to rely on those opinions or why they do not constitute substantial evidence on that point. Further, even if she is correct that the finding made by Dr. Klekamp translates into a more severe restriction on the use of her left hand - a conclusion that appears nowhere in Dr. Klekamp's notes - the vocational expert testified that even if Plaintiff were limited to occasional

-9-

handling and fingering with her left hand, she could still do her past work because she was right-hand dominant. (Tr. 56). Consequently, there is simply no basis upon which the Court could direct a remand for further consideration of this issue.

### VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 12) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### VIII. Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Any response must be filed withing 14 days thereafter. Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal. *See, e.g., Robert v. Tesson,* 507 F.3d 981,994 (6th Cir. 2007)

/s/ Terence P. Kemp
United States Magistrate Judge